UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GERALD RUSSELL, | * |
| Petitioner, | * |
| v. | * Civil Action No. 15-cv-13177-ADB |
| RAYMOND MARCHILLI, | * |
| Respondent. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Petitioner Gerald Russell is currently serving a 27–30 year sentence following his conviction for seven counts of indecent assault and battery on a child pursuant to Mass. Gen. Laws ch. 265, § 13B. Presently pending before this Court is Petitioner's petition for habeas corpus relief brought under 28 U.S.C. § 2254, in which he argues that his trial suffered from federal constitutional violations. The petition for a writ of habeas corpus is denied for the reasons set forth below.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The Massachusetts Supreme Judicial Court ("SJC") provided an account of the facts, which is summarized below. See Commonwealth v. Russell, 23 N.E.3d 867, 869–71 (Mass. 2015).

Petitioner was the boyfriend and later the husband of the victim's mother. Id. at 869. In 1980, he began living with the victim and her mother. Id. According to the victim, shortly after Petitioner moved in, when she was six years old, he began to sexually abuse her. Id. The victim testified that Petitioner would touch the victim's breasts and vaginal area while she was in the

bathtub. Id. The victim also testified that the abuse steadily escalated and became more invasive: Petitioner placed his fingers between the folds of her genital opening, rubbed his penis between her buttocks and in her vaginal area, performed oral sex on her, and required her to perform oral sex on him. Id.

The victim also testified that she witnessed the Petitioner choking, slapping, and punching her mother, throwing objects at her, and ripping out her hair. Id. She alleged that Petitioner told her that he would stop abusing her mother as long as the victim submitted to his sexual advances. Id. He purportedly threatened that he would put the victim and her siblings in foster care and that her mother would go to jail if the victim told anyone about his sexual advances. Id. The victim nonetheless told her mother in 1985 that Petitioner had been "touching her," but when the victim's mother confronted the Petitioner, he denied the allegation. Id.

In May 1987, when the victim was approximately thirteen years old, the abuse escalated to full vaginal intercourse in addition to the other sexual abuse. Id. This allegedly continued until October 31, 1989. Id. The victim testified that on that date, as a condition for letting her go out on Halloween, Petitioner insisted that the victim perform oral sex on him. Id. The victim stated that she did not return home that evening, instead revealing the history of sexual abuse by Petitioner to a friend. Id.

On September 19, 1990, an Essex County grand jury returned six indictments, each charging Petitioner with three counts of statutory rape pursuant to Mass. Gen. Laws ch. 265, § 23. Id. Each charge reflected a distinct time period and a distinct mode of rape. Id. Petitioner subsequently fled to Mexico and remained there until 2010, when he returned to the United States. Id. at 870. Petitioner was tried in Superior Court in 2012. Id.

After the testimony concluded, the judge instructed the jury, sua sponte and over

Petitioner's objection, on the lesser included charge of indecent assault and battery as to the seven counts related to the earliest allegations of penile and digital penetration. Id. The judge explained that "given [the victim's] state of development . . . there may be an issue as to whether there was penetration or not. That does not include those charges that specify oral intercourse . . . because there, again, there's not a real issue of penetration there." Id. The judge also gave what he described as his "traditional instruction" as to the definition of the proof beyond a reasonable doubt standard, which closely mirrored the Federal Judicial Center's Pattern Criminal Jury Instruction 21 (1998). Id. at 870, 872–73. Petitioner objected and specifically requested a Webster charge, which requires that in order to convict, the jurors must feel "an abiding conviction to a moral certainty of the truth of the charges." Id. at 870. The judge overruled the objection. Id. After the case had been submitted to the jury, the jury asked for a clarification on the reasonable doubt standard, and again Petitioner's counsel requested that the jury be given a Webster charge. Id. The judge denied the second request, and instead repeated his initial instruction. Id.

The jury found Petitioner not guilty on all eighteen counts of statutory rape. Id. The jury did, however, find Petitioner guilty on each of the seven counts of indecent assault and battery on a child. Id. at 870–71. Petitioner was sentenced and is currently serving three consecutive and three concurrent terms of not less than nine but not more than ten years in state prison, followed by a consecutive term of five years probation. Id. at 871. He timely filed for direct appellate review by the Supreme Judicial Court of Massachusetts, which affirmed his conviction, but contemporaneously established a new mandatory instruction on the reasonable doubt standard to be given on a prospective basis. Id. at 869. On August 17, 2015, Petitioner filed a petition for a writ of habeas corpus [ECF No. 1] with this Court, and on June 17, 2016 he filed a memorandum

in support of the petition [ECF No. 20]. On October 20, 2016, Respondent Raymond Marchilli filed an opposing memorandum [ECF No. 27].

## II. LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas corpus relief may only be granted on a claim "adjudicated on the merits in State court proceedings" if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The First Circuit has further explained that:

> [a]n adjudication will be contrary to clearly established law if the state court applies a rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent. On the other hand, a state court adjudication constitutes an unreasonable application if the state court identifies the correct governing legal principle from the Supreme Court's then-current decisions but unreasonably applies that principle to the facts of the prisoner's case.

Hensley v. Roden, 755 F.3d 724, 731 (1st Cir. 2014) (internal citations and quotations omitted). An unreasonable application of clearly established federal law requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (internal quotations omitted). A state court judgment is based on an unreasonable determination of the facts if the decision is "objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Where a petitioner brings a habeas petition on the specific grounds of an improper reasonable doubt jury instruction, he must show "both that the instruction was ambiguous and that there was a 'reasonable likelihood' that the jury applied the instruction in a way that relieved

4

the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190–91 (2009) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "[I]t is not enough that there is some 'slight possibility' that the jury misapplied the instruction." Id. (citing Weeks v. Angelone, 528 U.S. 225, 236 (2000)). The pertinent question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (quoting Estelle, 502 U.S. at 72).

## III. DISCUSSION

Petitioner bases his petition on two grounds: (1) his due process rights were violated when the trial court judge failed to give a Webster instruction on the beyond a reasonable doubt standard, and (2) his due process rights were violated when the trial court judge erroneously instructed on the lesser included charge of indecent assault and battery on a child, pursuant to Mass. Gen. Laws ch. 265, § 13B. Petitioner is proceeding pro se, so the Court must construe his claims liberally. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

### a. Ground One: Reasonable Doubt Instruction

Petitioner argues that he was entitled to a Webster charge on the beyond a reasonable doubt standard at trial. Petitioner's argument appears to be two-pronged: first, he claims that the charge given by the trial judge was unconstitutional because it diluted the Commonwealth's burden of proof and shifted it, in part, to him. Second, he asserts that upon the SJC's decision in his case announcing a new mandatory, uniform instruction on the beyond a reasonable doubt standard, he is entitled to retroactive application of that new standard. For the reasons set forth below, each of these arguments is without merit.

#### i. Constitutionality of Petitioner's Jury Instruction

The judge at Petitioner's trial instructed the jury by incorporating elements of both the

5

Webster charge and the Federal Judicial Center's Pattern Criminal Jury Instruction 21 (1998) ("Instruction 21"). Russell, 23 N.E.3d at 872–73. The judge's instruction, in relevant part, provided:

> [P]roof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give him the benefit of the doubt and find him not guilty. This is what we mean by proof beyond a reasonable doubt.

Id. at 872 n.7.

Petitioner argues that the trial judge's instruction, which included elements of Instruction 21, unconstitutionally shifted the burden of proof to Petitioner and diluted the Commonwealth's burden of proof. This argument fails because there is no Supreme Court opinion that requires a particular combination of words to articulate the reasonable doubt standard, and the instruction did not otherwise violate due process.

First, there is no Supreme Court case that specifically articulates how reasonable doubt should be defined in jury instructions. In Victor v. Nebraska, the Court held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." 511 U.S. 1, 5 (1994). Since then, appellate courts in the First Circuit have addressed jury instructions concerning the reasonable doubt standard, but the Supreme Court has not revisited the issue. See, e.g., United States v. Woodward, 149 F.3d 46, 69 n.15 (1st Cir. 1998) (criticizing the "firmly convinced" language in beyond a reasonable doubt instruction but holding that it survived the high hurdle of plain error review); United States v. Rodriguez, 162 F.3d 135, 145 (1st Cir. 1998) (affirming "real possibility" language in reasonable doubt instruction).

Thus, because courts are not required to use a particular combination of words to describe reasonable doubt, Victor, 511 U.S. at 5, to establish a constitutional violation, "the petitioner must show that the allegedly defective jury instruction 'so infected the entire trial that the resulting conviction violated due process.'" Lucien v. Spencer, No. 07-cv-1138-MLW, 2015 WL 5824726, at *12 (D. Mass. Sept. 30 2015) (quoting Estelle, 502 U.S. at 72). "The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard," Victor, 511 U.S. at 6, which requires that the government prove every element of the charged offense beyond a reasonable doubt. Id. at 5 (citing In re Winship, 397 U.S. 358, 364 (1970)). A defendant's due process rights may be violated if the instructions shift the burden of proof from the prosecution to the defendant, or lower the burden of proof to something less than reasonable doubt. See Cupp v. Naughten, 414 U.S. 141, 147–48 (1973).

Here, Petitioner argues (1) that the "firmly convinced" language in the jury instructions "set the standard for conviction too low," and (2) that the "real possibility" language "set the standard for acquittal too high." The SJC rejected Petitioner's claim that the "firmly convinced" language lowered the prosecution's burden of proof, and declined to follow the reasoning of State v. Perez, 976 P.2d 427 (Haw. Ct. App. 1998), which held that under Hawaii law, "firmly convinced" signified a burden of proof of less than beyond a reasonable doubt. Russell, 23 N.E.3d at 873. The SJC observed that "[t]he reasoning of the Perez case has not gained traction in other jurisdictions," and cited Justice Ginsburg's endorsement of Instruction 21 and decisions by multiple Circuit Courts upholding the "firmly convinced" language under the due process clause. Russell, 23 N.E.3d at 872–74; see Victor 511 U.S. at 27 (Ginsburg, J., concurring) ("This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly

7

and comprehensibly."). Although the First Circuit has not addressed this specific language in the context of a habeas petition that challenges its constitutionality, it has reviewed this language on direct appeal. See Woodward, 149 F.3d at 69 n.15. In Woodward, the First Circuit criticized the use of the "firmly convinced" language and advocated for a different reasonable doubt instruction, but nonetheless held that "[t]he district court's instruction survive[d] the high hurdle of plain error review." Id. Given that "the burden of justifying federal habeas relief for state prisoners is 'greater than the showing required to establish plain error on direct appeal,'" Engle v. Isaac, 456 U.S. 107, 134–35 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)), it must follow that in this Circuit, the use of the phrase "firmly convinced" in a reasonable doubt instruction survives habeas review.

Further, at least one other circuit has adopted the view that an instruction including the "firmly convinced" language does not violate due process and does not entitle a petitioner to habeas relief. In Harris v. Bowersox, the Eighth Circuit held that the state's jury instruction, which used the "firmly convinced" language, "adequately conveyed the jury's obligation that it could convict only upon finding [the defendant] guilty beyond a reasonable doubt," and therefore denied habeas relief. 184 F.3d 744, 752 (8th Cir. 1999). Several other circuits have determined on direct review that jury instructions including the "firmly convinced" language are constitutionally sufficient. See United States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995) ("We agree that the 'firmly convinced' language . . . is a correct and comprehensible statement of the reasonable doubt standard."); United States v. Williams, 20 F.3d 125, 131 (5th Cir. 1994) ("[W]e think that the 'firmly convinced' language, read in the context of the charge as a whole, adequately apprises the jury of the requisite level of proof."). Given the approval of this language in this Circuit and others, Petitioner has failed to demonstrate that the use of the phrase "firmly

8

convinced" allowed the jury to convict on a lesser standard than that required by Winship, and he is therefore not entitled to habeas relief on that basis.

Petitioner also contests the trial judge's use of the phrase "real possibility" when instructing on what constitutes reasonable doubt. The "real possibility" language also has its roots in Instruction 21. The SJC rejected this argument, citing Rodriguez, 162 F.3d at 145, where the First Circuit found that "[t]he trial judge may require a 'real possibility' of doubt because '[a] fanciful doubt is not a reasonable doubt,'" and went on to hold that giving Instruction 21 was not improper. Russell, 23 N.E.3d at 874 (citing Rodriguez, 162 F.3d at 146). The SJC correctly concluded that "the charge on reasonable doubt given by the judge in this case adequately 'impress[ed] upon the [jury] the need to reach a subjective state of near certitude of the guilt of the accused,'" and that "the instruction met the minimum requirements of due process under the Fourteenth Amendment." Id. at 875 (citing Victor, 511 U.S. at 15). Therefore, the trial court's use of the phrase "real possibility" was constitutionally permissible because it created no "reasonable likelihood that the jury understood the instructions to allow conviction based on proof" less than beyond a reasonable doubt, and therefore it did not violate due process. See Victor, 511 U.S. at 6; Estelle, 502 U.S. at 72.

In sum, no Supreme Court cases specifically articulate how reasonable doubt must be defined in jury instructions. See id. at 5. Further, the trial court's use of "firmly convinced" and "real possibility" in its jury instructions did not create a reasonable likelihood that the jury understood them to allow conviction based on proof less than beyond a reasonable doubt. Petitioner's due process rights were therefore not violated and he is not entitled to habeas relief on these grounds.

ii. Retroactive Application of New Reasonable Doubt Instruction

Petitioner next argues in his memorandum that under Massachusetts SJC precedent, he was entitled to a retroactive application of the new mandatory jury instruction on reasonable doubt. Petitioner raises this issue for the first time in his memorandum and failed to include it in his petition, and it is therefore waived. See Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015) (holding argument "waived" where petitioner "failed to include [it] in his habeas petition"); Yildirim v. Demoura, 280 F. Supp. 3d 206, 214 (D. Mass. 2017) (holding that petitioner's failure to explicitly invoke ground for relief in his petition could be sufficient to find that he waived the issue).

Further, even if not waived, this argument would not succeed on the merits because the issue is not cognizable under federal habeas review. First, the issue of whether the petitioner was entitled to the benefit of the new rule is a matter of state law, which is not a proper subject of federal habeas review. See Estelle, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief [because] [i]nstructions in a state trial are a matter of state law." Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982). Here, the SJC determined that the Commonwealth would benefit from an updated jury instruction and that the new instruction would be used "going forward." See Russell, 23 N.E.3d at 877–78. This determination is a matter of state law not cognizable under habeas review.

Second, as the SJC correctly noted in Russell, there is no Supreme Court precedent establishing that petitioners are constitutionally entitled to retroactive application of new state law rules. See Sanders v. Fair, 728 F.2d 557, 558 (1st Cir. 1984) (holding that when "fac[ing] the

question of whether, or when, the federal Constitution requires a state court to apply a new rule of state law retroactively," the issue is one of state law and "the federal constitution has no voice upon the subject") (internal citations and quotations omitted); see also Hicks v. Callahan, 859 F.2d 1054, 1058 (1st Cir. 1988) (holding that petitioner did not have "a valid federal constitutional reason for giving [new state law felony-murder] rule retroactive effect" and dismissing habeas petition); Commonwealth v. Dagley, 816 N.E.2d 527, 533 n.10 (Mass. 2004) ("When announcing a new common-law rule, a new interpretation of a State statute, or a new rule in the exercise of our superintendence power, there is no [federal] constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively."). Therefore, because the retroactive application of new state-law rules is a matter of state law, this ground for relief also fails.

### b. Ground Two: Lesser Included Offense Instruction

Petitioner's second ground for habeas review rests on the assertion that the trial judge committed reversible error when he sua sponte instructed the jury on the lesser included charge of indecent assault and battery on a child pursuant to Mass. Gen. Laws ch. 265, § 13B. Petitioner argues that this was a due process violation, but his brief does not elaborate on this position. Although Respondent asserts that Petitioner did not exhaust this claim in state court, the Court is not able to conclude on the record before it that the claim is unexhausted. Nonetheless, Petitioner's claim fails on the merits.

"The AEDPA instructs that habeas relief 'shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)). To demonstrate exhaustion, a "habeas petitioner bears a heavy burden to show that he fairly and recognizably

presented to the state courts the factual and legal bases of [his] federal claim." Id. (quoting

Adelson v. DiPaola, 131 F.3d 259, 262 (1st Cir. 1997)). A petitioner can satisfy the "heavy

burden" of showing that his claim was raised in state court in one of the following ways:

> reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim.

Id.

Respondent, citing Conningford, argues that "petitioner 'did not cite a specific constitutional provision . . .' in his SJC brief." [ECF No. 27 at 22] (citing Conningford, 640 F.3d at 482). Petitioner did, however, cite to the Fourteenth Amendment of the United States Constitution in his brief to the SJC, however briefly. Appellant's Brief to the SJC, No. SJC-11602 at 39 ("For the reasons stated in Argument II, the judge's instruction on the lesser included offense was error, and violated the defendant's right to due process under the Fourteenth Amendment and Article Twelve [of the Massachusetts Declaration of Rights]."). He did not cite any federal cases or flesh out a federal argument. See id. at 30–38. In Dyer v. Ponte, the First Circuit considered the question of whether "a petitioner who *only* cites 'book and verse' has done enough to inform the state court of his federal constitutional claim." 749 F.2d 84, 87 (1st Cir. 1984). There, the petitioner made two references to the Fourteenth Amendment in his brief to the SJC but "cited no federal cases . . . and made virtually no federal argument, in sharp contrast to his extensive discussion of the issue under state law." Id. at 86. The court decided to address Dyer's petition on the merits, but advised counsel "in the future not to rely on a passing reference to a constitutional provision without supporting federal argument and without citations to federal authorities." Id. at 87. Under the logic of Dyer, the Court cannot conclude that the

references to the Fourteenth Amendment in Petitioner's brief were insufficient to exhaust his claim. Cf. Gagne v. Fair, 835 F.2d 6, 8 (1st Cir. 1987) (determining that petitioner who only included term "due process of the law" in issue caption "ha[d] fallen short even of the minimal citation which led the Dyer court to a reluctant review of the underlying claim"); Crouse v. Dickhaut, No. 07-cv-12004-MLW, 2011 WL 3584813, at *3 (D. Mass. Aug. 15, 2011) (holding that petitioner's "solitary reference to his 'constitutional right of due process' falls short of the line drawn in Dyer" because "he did not even explicitly invoke a particular provision of the United States Constitution").

Respondent next argues that because the SJC addressed the lesser included offense instruction argument as a state claim and relied only on state case law, Petitioner's brief did not adequately raise a possible federal constitutional claim and his claim has therefore not been exhausted. While the fact that the SJC analyzed the issue only with regard to state law may support the view that it was not alerted to the federal constitutional claim, "the state court need not have addressed or decided a petitioner's federal claim in order for the exhaustion requirement to be met." Gagne, 835 F.2d at 8 (citing Kines v. Butterworth, 669 F.2d 6, 12 (1st Cir. 1981); accord Perkins v. Roden, No. 08-cv-40231-FDS, 2011 WL 1642308, at *3 n.4 (D. Mass. Apr. 28, 2011) ("It is true that the Supreme Judicial Court need not specifically address or decide federal claims in order for the exhaustion requirement to be met."); Rodriguez v. Russo, 495 F. Supp. 2d 158, 168 (D. Mass. 2007) (citing Gagne, 835 F.2d at 8). Thus, because Petitioner cited a specific constitutional provision in his brief to the SJC, the Court is unable to conclude that the claim was not exhausted, and the fact that the SJC did not address the federal issue does not alter the analysis.

To succeed on the merits of his claim that the instruction on the lesser included offense

was in error, Petitioner must demonstrate either that the inclusion of the lesser included offense instruction was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, or that the state court based its decision on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1–2).

Most of the Supreme Court's jurisprudence on the constitutionality of lesser included offense instructions addresses whether a defendant is entitled to an instruction which the trial court failed to give. See, e.g., Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction). Petitioner does not cite any Supreme Court cases that address the issue of whether a defendant has a constitutional right to *exclude* an instruction on a lesser included offense. Instead, Petitioner cites only cases in which a defendant argues he was entitled to a lesser included offense instruction. See, e.g., Schmuck v. United States, 489 U.S. 705, 722 (1989) (holding petitioner not entitled to lesser included offense instruction); Keeble v. United States, 412 U.S. 205, 208 (1973) (holding defendant entitled to lesser included offense instruction). Thus, Petitioner has failed to identify any Supreme Court case holding that a defendant has a right to exclude a lesser included offense instruction if it is warranted by the evidence. As such, Petitioner has not demonstrated that the inclusion of the lesser included offense instruction over Petitioner's objection was contrary to, or an unreasonable application of, Supreme Court precedent. See Alexandre v. Maine, No. 08-cv-0226, 2008 WL 4787562, at *5–*8 (D. Me. 2008) (holding that habeas petitioner had not shown constitutional right to exclude lesser included offense instruction when he only cited cases discussing a petitioner's right to inclusion of a lesser included offense instruction).

Next Petitioner argues, but only in passing, that the trial court's instructions on the lesser

included offense were based on an unreasonable determination of the facts in light of the evidence presented in state court. The SJC engaged in a detailed analysis of the evidence presented at Petitioner's trial. See Russell, 23 N.E.3d at 879–82. It concluded that there was sufficient evidence for a reasonable jury to determine that Petitioner engaged in non-penetrative but indecent touching of the victim, which supported the instruction for the lesser included offense of indecent assault and battery on a child. Id. at 879–82. In order to demonstrate that a state court based its decision on an unreasonable determination of the facts, Petitioner would have to present clear and convincing evidence to overcome the presumption of correctness applied to the state court's factual findings. See 28 U.S.C. § 2254(e)(1). He does not do so here. Instead, he makes a conclusory statement that "the evidence provided no basis for the jury to accept the complainant's claims of genital touching." [ECF No. 20 at 17]. He cites no evidence whatsoever to support this assertion. Thus, the Court cannot conclude that the state court's determination of the facts was unreasonable, and Petitioner is not entitled to relief on this basis.

IV.  CONCLUSION

Accordingly, Petitioner's petition for a writ of habeas corpus [ECF No. 1] is DENIED. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254 Cases, R. 11(c). Here, because Petitioner has raised genuine, non-frivolous issues, the Court will issue a certificate of appealability as to all grounds asserted in the petition.

**SO ORDERED.**

August 9, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE